## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**SHEILA JENKINS**                                                    **PLAINTIFF**

**V.**                                         **CAUSE NO. 1:13CV352-LG-JCG**

**ISLAND VIEW CASINO**                                           **DEFENDANT**

### MEMORANDUM OPINION AND ORDER
### GRANTING IN PART AND DENYING IN PART
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is the [33] Motion for Summary Judgment filed by Defendant Island View Casino ("Defendant" or "Island View").  Having reviewed the submissions of the parties and the relevant law, the Court is of the opinion that the Motion should be granted in part and denied in part.

This is an employment discrimination action.  Plaintiff Sheila Jenkins ("Plaintiff" or "Jenkins"), a black female over the age of forty who is proceeding *pro se*, claims that Island View discriminated against her on account of race and age in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA").  She also alleges that she suffered retaliation, hostile work environment, and sexual harassment, and that Island View "provided false statements and slanderous information" to the EEOC (Compl. 1-2, ECF No. 1), which Island View has construed as a defamation claim.

Defendant moved for summary judgment on all claims.  As more fully discussed herein, the Court denies Defendant's Motion in part because Defendant failed to meet its summary judgment burden to show that there are no genuine issues of material fact with respect to Plaintiff's claim that she was discriminated

against on account of race and age in terms of hostess rotations and seatings.  The Court further finds that Defendant has not demonstrated an absence of material fact with respect to Plaintiff's claim that her supervisor retaliated against her prior to when she filed an EEOC charge in March 2013.  The Court grants the Motion on all other claims.

### STANDARD OF REVIEW

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In reviewing a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party.  *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 940 (5th Cir. 2005). As movant, Defendant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  If Defendant carries this burden, the burden shifts to Plaintiff to show that summary judgment should not be granted.  *Id.* at 324-25.

Plaintiff may not rest upon mere allegations in her Complaint but must set forth specific facts showing the existence of a genuine issue for trial.  *Abarca*, 404 F.3d at 940.  The Court will not, in the absence of proof, assume that Plaintiff could or would prove the necessary facts.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  Indeed, "although the pleadings filed by pro se parties are held to 'less stringent standards than formal pleadings drafted by lawyers,' pro se parties

2

must still comply with the rules of procedure and make arguments capable of withstanding summary judgment." *Ogbodiegwu v. Wackenut Corr. Corp.*, 202 F.3d 265, *2 (5th Cir. 1999) (citation omitted).

**SUMMARY JUDGMENT FACTS**

The Court has thoroughly reviewed Defendant's evidence as well as the more than 150 pages of exhibits submitted by Plaintiff with her response.  However, most of Plaintiff's exhibits are irrelevant to the actual issues before it on summary judgment.  For example, the Court agrees with Defendants that Plaintiff's Exhibits III and IV (medical documentation and disability benefits notice) and Plaintiff's Exhibit VI (documents allegedly showing that she was assaulted at work by a co-worker's roommate) are irrelevant for summary judgment purposes.

Accordingly, in the light most favorable to Jenkins, the relevant facts for summary judgment purposes are as follows:

**Plaintiff's employment with Defendant**

Island View employed Jenkins from approximately July 2007 to December 2013 when it terminated her for violating Island View's policy regarding rudeness or mistreatment of a guest or co-worker.[1]  Island View initially hired Jenkins as a Buffett hostess, but then promoted her to busser and eventually server.  Jenkins received and acknowledged receipt of Island View's anti-harassment and anti-discrimination policy upon hire.

---

[1] As discussed herein, Island View's termination of Jenkins is not at issue in this action.

**Plaintiff's allegations of discrimination**

Jenkins' primary complaint concerns hostess rotations and seatings in the Buffet.  As a server, Jenkins had to rely on the Buffet hostesses, all of whom were Asian females, for her customers.  According to Jenkins, the hostesses sat primarily black customers, whom she says are known to be bad tippers, in her section.  She also testified that while the hostesses were supposed to rotate servers, they sat less people in her section, which also led to less money.  Jenkins talked to several supervisors about the issue, but nothing was done to correct it.

In her deposition, Jenkins identified white servers that she alleges were treated better (*i.e.*, were given primarily white customers and/or more customers in the rotation) and servers under the age of forty that she alleges were treated better.  She admitted, though, that some black servers received the favorable treatment about which she complained and that some servers over forty receive the favorable treatment about which she complained.

Jenkins also claims, for the first time in response to summary judgment, that a Hispanic female and a black male were treated more favorably than she was because they went to jail and missed work but were able to keep their employment and "[t]his shows a fact of favoritism."  (Pl's. Mem. 7, ECF No. 36).  The only evidence she offers to support this new allegation is print-outs from a website entitled mugshots.com of the alleged co-employees.

**Plaintiff's allegations of hostile work environment and sexual harassment**

4

Jenkins says she began to experience a hostile work environment in 2012.

She testified in her deposition:

> A: People calling me snitch, people threatening to fight me, coworkers'
> friends or roommates threatening me at work, other people getting into
> hostile situations and [Island View] not addressing them.  Two people
> almost had a fight and they didn't do anything about it.  But the
> majority of the hostility was towards me.
>
> Q: At what point did this environment come about?
>
> A: I think in 2012.  It started then.
>
> Q: And you felt like it was because they thought you were a snitch, I
> guess?
>
> A: I don't – I don't really understand how it all came about.  My name
> came up, and it was like whatever was said, the hostility started.  And I
> never know what's said.  They never told me what nobody said.
>
> Q: Okay.  So they would say things to you like, you are a snitch, or I'm
> going to kick your ass?
>
> A: Yes.

(Pl's. Dep. 153:3-23, Ex. 2 to Def's. Mot., ECF No. 33-2).

With respect to her allegation of sexual harassment, Jenkins testified:

> A: They were always showing things on their – sexual stuff on the
> phone.  One specific thing was when Danielle displayed the coworker
> [on her phone showing him dancing on a stripper pole].  And I wrote a
> statement about two young males that were making sexual comments.
> I have that statement.  And they constantly talked about sex the whole
> time, you know, while you were at work.  And they wasn't trying to
> whisper.  They would just talk about it.
>
> Q: When do you think that this began?
>
> A: The sexual harassment?  Sexual harassment has always been an
> issue at the Island View for me.  It's a policy that's not upheld.  And I
> don't really think the people that work there understand sexual
> harassment.

. . .

Q: You said that they would talk about sex a lot.

A: Yes.

Q: What would they say?

A: Like, sexual acts.  Basically, did you see this video about this woman that did this.  And they would make comments about female guests. They would go in the back and talk about their bodies, what they wanted to do to them, things of that nature.

(*Id.* at 154:25-155:14, 156:21-157:5).

Jenkins identified multiple co-workers who made these comments:

Q: So every now and then, Rod or Brian or Booker or Kiki or Martina would make a comment about a woman's body:

A: Yes.  And Danielle would consistently elaborate about her days when she was a stripper.

Q: Be more specific for me.  What would she say?

A: That she used to be a stripper, and all this money she made.  And she was pregnant, and they was joking with her about how the baby going to come out on a stripper pole.  Just stuff like that.  And she would ask if we wanted to see her boyfriend on her phone on the stripper pole in her house.

Q: Did you ever see that video?

A: No.

Q: So every now and then, somebody would make a comment about a woman's body or –

A: This was every day.  If I'm there eight hours, I'm going to hear about sex, I know, at least six.

Q: So what would they say about sex?

6

A: Just talk about their girlfriends, what they did, who they want to have sex with or did you see that woman that just came in here? Did you see her butt, or things like that. Or they'll show – pull their phones out and show videos. Or some of it, with younger black men, they would rap about sexually explicit things in rap songs. They would always be rapping about it.

(*Id.* at 157:16-158:20).

Jenkins testified that she complained to multiple people, including supervisors, about these incidents. (*See id.* at 155:15-156:20, 162:21-163:1). She also submitted a handwritten letter to Island View's Human Resources Manager Rhonda Robertson on March 17, 2013, outlining behavior that she found offensive, including (1) a female co-worker showing a video of an intoxicated man in his underwear on a pink stripper pole at her house; and (2) the same co-worker telling a male co-worker that she was pregnant with another female's baby and the male saying that when she and the other female "had sex he wanted to watch." (Letter, Ex. 4 to Def.'s Mot., ECF No. 33-4). The letter also stated: "We have elderly and Christian people that work in the Buffett that are afraid to say anything to people like Danielle, Kiki, and Martina, in particular because they are the ones that participate in the sexual inappropriate behaviors . . . ." (*Id.* at 4-5). She requested that management address the issues so she would not have to continue telling her co-workers "I don't want to hear this or see this . . . ." (*Id.* at 5). Jenkins also met with Robertson on March 18, 2013.

**Plaintiff's March 2013 EEOC charge**

Jenkins filed an EEOC charge on or about March 29, 2013. She checked the

7

boxes for discrimination based on race and age, claiming: "On a continuing basis, I am being subjected to different terms and conditions of employment as it relates to being denied less customers than younger, Black and White servers.  And I am being assigned tables of the majority of Black customers."  (March 2013 EEOC charge 1, Ex. 10 to Pl.'s Mot., ECF No. 33-10).  She stated that she "complained to my supervisors Nancy (LNU) and Robin (LNU) about the disparity but nothing" was done to correct the problem.  (*Id.*).  She also claimed that she believed she was being discriminated against on account of her race and age in violation of Title VII and the ADEA.

Jenkins attached three handwritten pages of factual allegations to her charge, including allegations (1) that she witnessed her supervisor Robin Seymour ("Seymour") and a female co-worker looking at a video of an intoxicated male co-worker in his underwear on a pink stripper pole; and (2) that the same female co-worker told a male co-worker in front of her that was having a baby for another female and the male co-worker replied "I want to watch."  Jenkins said that she told Seymour about the exchange, but Seymour "took no action."  (*Id.* at 3).  She also alleged that Seymour allowed her friends at work, all of whom "are either white or young" females, to "participate in inappropriate sexual behaviors and break multiple rules at work."  (*Id.*).  Jenkins' handwritten narrative concludes: "Her [Seymour's] retaliation tactics are not talking to me at work.  I feel my job is in jeopardy."  (*Id.* at 4).

The EEOC investigated Jenkins' charge and determined that it was unable to

conclude that a violation of the statutes had occurred.  It issued its Dismissal and Notice of Suit rights to Jenkins on June 27, 2013.

**Plaintiff's December 2013 EEOC charge**

Jenkins filed a second EEOC charge on or about December 23, 2013.  She checked the boxes for discrimination based on age and for retaliation, and stated that she believed she was being discriminated against in violation of the ADEA because of her age and "in retaliation for filing a previous charge of discrimination and currently have a pending federal lawsuit."  (December 2013 EEOC charge, Ex. 14 to Def's Mot., ECF No. 33-14).  She claimed that her "supervisors have been micro managing everything that I do, since I filed my previous charge of discrimination in March, 2013 . . . ."  (*Id.*).  She also alleged that she received an unfair performance review in November 2013, and that in December 2013, two younger co-workers called her "Old Bitch", "Slut", and "Old Troll."  (*Id.*).  The EEOC has not issued a Notice of Suit Rights on the December 2013 charge.

DISCUSSION

## I.    Plaintiff's claims of discrimination based on race and age

Jenkins does not have any direct evidence of discrimination.  Accordingly, her Title VII race discrimination claim and her ADEA age discrimination claim are analyzed under the familiar *McDonnell Douglas* framework.  *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007); *see also Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010) (*McDonnell Douglas* framework applicable to ADEA claims).  "Under that framework, the plaintiff must first establish a prima

facie case of discrimination, which requires a showing that the plaintiff (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside h[er] protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy*, 492 F.3d at 556-57. "The plaintiff's burden of establishing a prima facie case is not onerous. To establish a prima facie case, a plaintiff need only make a very minimal showing." *Sanders v. Anadarko Petroleum Corp.*, 108 F. App'x 139, 142 (5th Cir. 2004) (citations and quotation marks omitted). If a plaintiff meets this burden, the burden shifts to the defendant to state one or more legitimate, non-discriminatory reasons for its action(s), and then back to the plaintiff to show pretext. *McCoy*, 492 F.3d at 557.

Because Island View has not attempted to set forth any legitimate, non-discriminatory reasons for its alleged actions, the Court has analyzed only Jenkins' *prima facie* case. In doing so, the Court finds that Island View has failed to meet its summary judgment burden on Jenkins' claim that she was discriminated against with respect to hostess rotations and seatings, but is entitled to summary judgment on Jenkins' new allegations of "favoritism" related to two of her co-workers who went to jail.

### A.   Plaintiff's discrimination claim related to hostess rotations and seatings

Island View states that Jenkins cannot show that employees outside the

protected class were treated more favorably than she was with respect to hostess rotations and seatings.  Based on the facts before it, though, the Court finds that Island View has not satisfied its summary judgment burden with respect to this claim.

Island View's sole argument is that Jenkins cannot make out a race or age discrimination claim because it is "clear that both African Americans, and individuals over forty years of age, received the alleged special treatment about which" she complains, and, thus, Jenkins' age discrimination claim "cancels out" her race discrimination claim and vice-versa.  (Def's. Mem. 8, ECF No. 34).  In support of its argument, Island View cites a letter from a Senior Enforcement Investigator for the EEOC, in which the Investigator told Jenkins that her allegations that two servers over forty were assigned more customers than she was negated her age discrimination claim.  As shown herein, that is not the law and neither Island View nor the Investigator provided any support for this proposition.  By Island View's own admission, Jenkins has identified both white servers and servers under the age of forty that she claims were treated better.  This is sufficient for the minimal showing she must make for her *prima facie* case.

The case of *Crouch v. England*, No. C-05-391, 2006 WL 1663760 (S.D. Tex. June 14, 2006) illustrates why Island View's analysis is incorrect.  There, the plaintiff, a 62-year-old Hispanic woman, alleged race and age discrimination because she claimed she was treated differently from six other female employees in the terms and conditions of her employment.  Of her alleged six comparators, two were

Hispanic and two were over forty.  However, the court found that plaintiff had made a *prima facie* case of race discrimination because four of the six comparators were outside her protected class, although it acknowledged that her case was "not as strong as it might be because other women within her protected class" received the favorable treatment about which she complained.  *Id.* at *4.  Likewise, the court found that plaintiff had made a *prima facie* case of age discrimination because four of the six comparators were outside her protected claims, although, again, the court stated that her case "was weakened by the fact that two women in the protected age category" received the favorable treatment about which she complained.  *Id.*

The same is true here.  Jenkins identified white servers and servers under forty that she claims were treated more favorably than she was.  As in *Crouch*, that Jenkins admits that others in her protected class (black servers and servers over forty) may have received special treatment goes to the weight and sufficiency of Jenkins' evidence at trial, not to whether she can state a *prima facie* case of race discrimination and age discrimination.

Viewing the evidence in the light most favorable to Jenkins, Island View has failed to carry its summary judgment burden of demonstrating the absence of a genuine issue of material fact at trial on Jenkins' claims of race and age discrimination with respect to hostess rotations and seatings in the Island View Buffet.  Since Island View did not move for summary judgment on any other ground on that claim, that claim will proceed to trial.

**B.    Plaintiff's new allegations regarding co-workers who went to**

jail

The Court finds that Island View is entitled to summary judgment on Jenkins' new allegations of "favoritism" related to two co-workers whom she alleges went to jail but were not terminated. Jenkins' conclusory statements on page 7 of her Memorandum (ECF No. 36) that these co-workers were treated better than she was in that they "went to jail and missed work in violation of Island View policy and were able to keep their employment" while she was disciplined "for calling out sick or missing days [and] leaving early" is not supported by any actual evidence. Jenkins' "burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (citations and quotation marks omitted). Regardless, the Court finds that there is no genuine issue of material fact that these employees were treated differently than Jenkins. Jenkins cannot rebut Island View's summary judgment evidence that all three employees (Jenkins and her two alleged comparators) were disciplined for violating Island View's attendance policy.

## II.     Retaliation

The Court disagrees with Island View that Jenkins failed to exhaust administrative remedies with respect to any retaliation claim in her March 2013 EEOC charge. The scope of a plaintiff's judicial complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the plaintiff's EEOC charge. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). A plaintiff's EEOC "charge will be read somewhat broadly, in a fact-

specific inquiry into what EEOC investigations it can reasonably be expected to trigger." *Pacheco v. Mineta*, 448 F.3d 783, 792 (5th Cir. 2006).

Failure to check a certain box on the EEOC charge is not dispositive. *Sanchez*, 431 F.2d at 463 ("[W]e decline to hold that the failure to place a check mark in the correct box is a fatal error.  In the context of Title VII, no one- not even the unschooled- should be boxed out."); *see also Pacheco*, 448 F.3d at 792 ("To be clear, we do not require that a Title-VII plaintiff check a certain box or recite a specific incantation to exhaust his or her administrative remedies . . . .").  Instead,

> the crucial element of a charge of discrimination is the factual statement contained therein.  Everything else entered on the form is, in essence, a mere amplification of the factual allegations.  The selection of the type of discrimination alleged, i.e., the selection of which box to check, is in reality nothing more than the attachment of a legal conclusion to the facts alleged.  In the context of a statute like Title VII it is inconceivable that a charging party's rights should be cut off merely because he fails to articulate correctly the legal conclusion emanating from his factual allegations.

*Sanchez*, 431 F.2d at 462.

Although Jenkins' EEOC charge is not a model of clarity, the Court finds that Jenkins made factual allegations that she complained to her supervisor, Robin Seymour, about several issues – including her issues with hostess rotations and inappropriate behavior by co-workers – and that Seymour did nothing.  Jenkins then specifically references retaliation by Seymour: "Her retaliation tactics are not talking to me at work.  I feel my job is in jeopardy."  (March 2013 EEOC charge 4, Ex. 10 to Def's Mem., ECF No. 33-10).  *Cf. Bouvier v. Northrup Grumman Ship Sys., Inc.*, 350 F. App'x 917, 921 (5th Cir. 2009) (finding that plaintiff failed to exhaust

administrative remedies because she did not even reference retaliation in her EEOC charge).  Reading Jenkins' March 2013 EEOC charge somewhat broadly, the Court finds that an investigation of Jenkins' claim of retaliation by her supervisor could have reasonably been expected to grow out of the charge.

Island View's attempt at page 10, footnote 9 of its Memorandum (ECF No. 34) to characterize Jenkins' charge allegations as "a petty workplace dispute" that could not put it on notice that Jenkins "believed she was experiencing an adverse employment action for engaging in protected activity" does not lead the Court to a different result.  The Court does not consider allegations of "retaliation tactics" by a supervisor to be "petty."  Regardless, Jenkins was not required to allege a *prima facie* case of retaliation before the EEOC for purposes of the exhaustion requirement. *See Pacheco*, 448 F.3d at 792.

The fact that Island View did not address retaliation in its position statement also does not compel summary judgment in its favor.  The inquiry is not whether Island View chose to respond, but whether an investigation of Jenkins' claim of retaliation could have reasonably been expected to grow out of the charge, which the Court determines it could.  The Court also finds no merit to Island View's argument that if the "retaliation cause of action were to survive, Island View would face extreme difficulty responding to it based on the record."  (Def's. Mem. 11 n.12, ECF No. 34).  Jenkins clearly alleged retaliation in her Complaint, and Island View had sufficient time to engage in discovery and develop a record to move for summary judgment on the *prima facie* elements of that claim.  However, because Island View

did not do so, the Court is constrained to deny summary judgment on this claim. Jenkins' claim for retaliation by her supervisor, Robin Seymour, will proceed to trial.

To be clear, for purposes of trial, the only retaliation claim before this Court is Jenkins' claim of retaliation prior to filing her March 2013 EEOC charge. To the extent she alleges that she suffered retaliation for filing her March 2013 charge, that issue is not yet before the Court since it is the subject of Jenkins' still-pending December 2013 EEOC charge.[2] *See Simmons-Myers v. Caesars Entm't Corp.*, 515 F. App'x 269, 273-74 (5th Cir. 2013). The same is true for Jenkins' claim in her response that she was terminated after filing her retaliation charge (the December 2013 charge); the issue of Jenkins' termination is not before the Court in this action.

## III.   Hostile work environment/sexual harassment

### A.   Administrative exhaustion

The Court agrees with Island View that Jenkins failed to exhaust administrative remedies regarding any hostile work environment claim based on race or age. Jenkins' deposition testimony revealed that the "hostile work environment," which she claims began in 2012, was based on being called a snitch, people threatening to fight her, coworkers' friends or roommates threatening her at work, and other people getting into hostile situations that Island View did nothing about. In her summary judgment response, she also claims that co-workers mocked

---

[2] For example, Plaintiff submitted an exhibit which she claims shows that she was micro-managed at work after filing her EEOC charge. That exhibit is not relevant to the actual issues in this action, however.

her because of her age.  However, none of these allegations – or anything close to them – is included in her March 2013 EEOC charge.  The Court finds that an investigation of the hostile work environment based on race and age[3] about which Jenkins now complains could not have reasonably been expected to grow out of her EEOC charge.  *See, e.g.*, *Magana v. Tarrant/Dallas Printing*, 193 F.3d 517, *1 (5th Cir. 1999) (finding that the claim of hostile work environment contained in plaintiff's judicial complaint involved new and independent allegations of discrimination that neither grew out of nor were directly related to the subject matter of his EEOC charge, and, thus, the hostile work environment claim was beyond the scope of the court's jurisdiction).  The Court does not opine regarding any hostile work environment allegations Jenkins may have made in her second EEOC charge, since, as discussed above, the issues raised in that charge are not before the Court.

Moreover, the Court rejects Jenkins' argument that her Exhibit II, a collection of alleged internal complaints she made after the EEOC issued its notice of suit rights, shows that she "did not fail to exhaust any administrative remedies" because Island View "was well aware that Plaintiff was being discriminated against as the claim by Defendant alleges." (Pl's. Mem. 8, ECF No. 36).  Internal complaints do not satisfy the administrative exhaustion requirement.[4]  *See, e.g.*, *Daniels v. Worldcom*

---

[3] Island View objected to Plaintiff's Exhibit V, which she appears to argue supports her claim of hostile work environment based on age.  Because the Court finds that Jenkins failed to exhaust administrative remedies on that claim, the Court holds that Island View's objection is moot.

[4] Even if Jenkins had exhausted administrative remedies on a race-based hostile work environment claim, Island View would still be entitled to summary

*Corp.* No. 3:97-CV-0721-P, 1998 WL 91261, at *4 (N.D. Tex. Feb. 23, 1998).

The Court does find, however, that a sexual harassment claim could have reasonably been expected to grow out of the March 2013 EEOC charge, which includes factual allegations of a supervisor and co-worker looking at a video of another co-worker in his underwear on a stripper pole, a female co-worker telling a male co-worker that she was pregnant with another woman's baby and the male co-worker telling her he "wanted to watch," and of her supervisor allowing co-workers to "participate in inappropriate sexual behaviors." The Court rejects Island View's arguments related to Jenkins' failure to check the box for discrimination based on sex and Island View's failure to address these allegations in its position statement for the same reasons already discussed herein. Since Island View has also moved for summary judgment with respect to the elements of Jenkins' sexual harassment claim, the Court addresses those elements below.

## B.    Sexual harassment

Jenkins must show that: (1) she belongs to a protected class; (2) was subjected to unwelcome sexual harassment; (3) the harassment was based on her sex; (4) the harassment affected a term, condition, or privilege of her employment; and (5) Island

---

judgment on that claim. Specifically, Island View met its summary judgment burden of showing that there is no genuine issue of material fact that any alleged hostile work environment was on account of Jenkins' race and Jenkins failed to come forward with specific facts showing the existence of a genuine issue for trial on that issue. *See, e.g., Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003) (to be actionable, plaintiff must prove that alleged harassment was based on race).

View knew or should have known of the harassment and failed to take remedial action. *Cain v. Blackwell*, 246 F.3d 758, 760 (5th Cir. 2001).

"Title VII is not 'a general civility code for the American workplace.'" *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 460 (5th Cir. 2013) (citation omitted). Therefore, in determining whether a hostile work environment exists, "courts closely consider the frequency of the discriminatory conduct; its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance" *Cain*, 246 F.3d at 760 (citation and quotation marks omitted).

Furthermore, "[n]ot all harassment will affect a term, condition, or privilege of employment." *Shepherd v. Comptroller of Pub. Accounts of Tex.*, 168 F.3d 871, 874 (5th Cir. 1999). "The mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment." *Id.* (citation and quotation marks omitted). Likewise, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) [do] not amount to discriminatory changes in the terms and conditions of employment." *Id.* (citation and quotation marks omitted). The core component of sexual harassment is "conduct designed to undermine a woman's competence." *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 270 (5th Cir. 1998). The plaintiff "must show that implicit or explicit in the sexual content is the message that the plaintiff is incompetent because of her sex . . . ." *Id.*

Thus, the Fifth Circuit Court of Appeals has held that an employee's "sending

of offensive materials to both men and women is evidence that the workplace itself, while perhaps more sexually charged than necessary, was not sexually charged in a way that made it a hostile work environment for either men or women." *Id.* It has also stated that workplace harassment is not "automatically discrimination because of sex because the words used have sexual content or connotations. 'The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" *Id.* at 270-71 (citation omitted).

Island View argues that Jenkins' allegations do not rise to the level of severe or pervasive conduct necessary for a *prima facie* case, and that, even if they did, there is no genuine issue of material fact that Island View knew or should have known of the harassment and failed to take remedial action. The Court agrees with Island View that, under Fifth Circuit precedent, Jenkins has not alleged conduct sufficient for a *prima facie* sexual harassment claim, and, thus, does not address whether Jenkins can show that Island View knew or should have known of the harassment and failed to take remedial action.

Construing the facts in the light most favorable to Jenkins, the evidence shows at most that the Buffet workplace at Island View was more sexually charged than necessary.[5]  Jenkins has not alleged that any statements were made to or about

_____

[5] The Court has taken into account Exhibit X (ECF No. 36-11) submitted by Jenkins.  That exhibit encompasses statements made by Jenkins and another employee that a male co-worker made statements about "sex in the booty hole," sex with fat women, having STDs, and going to the store to buy condoms.  As discussed herein, this incident does not rise to the level of actionable hostile work

her, only that they were made in her presence and the presence of others by both males and females. She also alleges that both men and women talked about sex and did things such as look at "sexual stuff on the phone." There is nothing implicit or explicit in the alleged conduct that it was meant to show that Plaintiff is incompetent because of her sex. *See Butler*, 161 F.3d at 270. While the Court does not condone such an atmosphere in the workplace, it does not amount to conduct that is actionable under Title VII. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (for actionable sexual harassment, plaintiff "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimination because of sex") (citation, quotation marks, and emphasis omitted).

## IV.   Defamation

Island View questions whether Jenkins has even stated a claim for defamation. The Court agrees that Jenkins failed to allege such a claim in her Complaint. In any event, even if she had stated such a claim, Jenkins failed to address the claim on summary judgment, and, thus, has abandoned it. *See Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1164 (5th Cir. 1983) (plaintiff abandoned theory pleaded in complaint but not raised in opposition to summary judgment). Finally, although unclear, to the extent Jenkins intended Exhibit I – which she claims shows that "Defendant has no documentation on Plaintiff until after an EEOC charge was filed" (Pl's. Mem. 5, ECF No. 36) – to address this claim, the Court finds

---

environment, either on its own or considered with Jenkins' other allegations.

that Island View carried its summary judgment burden on any possible defamation claim, and Exhibit I does not meet Plaintiff's burden to show that there is a genuine issue of material fact for trial.

### CONCLUSION

Defendant failed to meet its summary judgment burden on Plaintiff's claims of race and age discrimination with respect to hostess rotations and seatings, and on her claim of retaliation by her supervisor prior to when she filed her March 2013 EEOC charge.  Therefore, those claims will proceed to trial.  Defendant is entitled to summary judgment on Plaintiff's remaining claims.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [33] Motion for Summary Judgment filed by Defendant Island View Casino is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED AND ADJUDGED** that all claims by Plaintiff, except for race and age discrimination with respect to hostess rotations and seating, and for retaliation prior by her supervisor prior when she filed her March 2013 EEOC charge, are **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED** this the 6th day of November, 2014.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE